COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-132-CR

 

 

DOUGLAS WAYNE SWARINGEN                                            APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

                      FROM COUNTY COURT OF YOUNG COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  Introduction

In two issues, appellant Douglas Wayne Swaringen
asserts that the evidence is legally and factually insufficient to support his
conviction for the offense of terroristic threat.  We affirm.








                              II.  Factual and Procedural History

This is the case of beer talking.[2]  The basic background facts of this case are
not in dispute:  on July 14, 2007,
Swaringen fell off his bicycle because he was drunk, and he proceeded to get
into an argument with the police. 
Swaringen was belligerent because he harbored a grudge against the
Graham Police Department for its alleged insensitivity to his wife=s
special needs.

Because of his intoxicated state and hostile
attitude, Swaringen found himself, not for the first time, in the back of a
Graham Police Department police cruiser on his way to the Young County Justice
Center.  According to Officer William
Allred, the arresting officer, Swaringen said Ahe was
going to shoot and kill us all when he gets out of jail.@  Officer Allred also said that Swaringen said A[e]very
one of you [i.e., the police] needs to be shot.@  This second statement, about needing to be
shot, was recorded by equipment in the police car and memorialized in the
officer=s police
report.  The first statementCthe one
about Swaringen shooting the policeCwas
not.  It was Swaringen=s
unrecorded and unmemorialized statement that led to his indictment, trial, and
conviction.








The State called three witnesses at trialCJimmy
Darrell Odom, Officer Tommy Shawver, and Officer Allred.  Odom testified that on July 14, 2007, he was
leaving the Minute Mart in Graham when he saw Swaringen fall off his bike.  He testified that he suspected that Swaringen
was drunk and that Swaringen Areally
bumped his head good@ from the fall because he saw
Swaringen bleeding from his head.  Swaringen
then got Amouthy@ with a
woman who came to Swaringen=s
assistance, so Odom flagged down a nearby officer (Officer Allred), who tried
to help Swaringen.  All the officer=s
efforts seemed to do was further anger Swaringen.  When the officer tried to put Swaringin=s hands
behind his back, Swaringin resisted, and the officer bent him over the hood of
a nearby truck.  Next, a brief struggle
occurred between Swaringen and Officer Allred and another officer (Officer
Shawver), with the officers eventually subduing Swaringen and placing him under
arrest.








Officer Shawver testified that he responded to
Officer Allred=s request for assistance.  When he arrived at the scene, Officer Allred
was in the process of arresting Swaringen, and he observed that Officer Allred
had Swaringen=s left arm behind him and had
him bent over the hood of a truck. 
Officer Shawver then assisted Officer Allred in handcuffing
Swaringen.  Swaringen was both Abelligerent@ and Avery
intoxicated.@ 
On cross examination, Officer Shawver said that while he heard Swaringen
cursing at him and Allred, he did not hear Swaringen make any threats against
the officers.  Officer Shawver also said
that he knew that Swaringen=s wife,
Amelia, had mental problems, that she was often arrested and/or hospitalized as
a result of those problems, and that he was aware of the tempestuous
relationship that existed between Swaringen and Amelia.

Officer Allred testified that he was driving
towards the Minute Mart when he saw Swaringen fall off his bike.  He came to Swaringen=s
assistance, but Swaringen was both Acombative@ and Aintoxicated,@ so he
called for backup.  Officer Allred could
smell alcohol on Swaringen=s
breath, and his eyes were bloodshot. 
When Swaringen refused to get up, the officer grabbed his hand and
pulled him to his feet.  Swaringen began Atwisting,@ and the
officer pushed him against the hood of a nearby vehicle.  He and Officer Shawver then arrested
Swaringen for public intoxication. 
Officer Allred testified about Swaringen=s first
verbal threat:

A.  I placed him in the patrol car, and I went
around and basically sat in my car.  That=s when I sat in my car,
fixing to take him to the jail.

 

Q.  Okay. 
Did he make a threat to you?

 

A.  Yes, sir.

 

Q.  What did he say?

 

A.  He said he was going to shoot and kill us all
when he gets out of jail.

 

Q.  And did you then -- what did you do next?

 








A.  I turned my -- I had my camera -- my dash
camera on, and then I turned it around to face him.  But I remembered that this is a new car, just
got it.  It has a dash -- it has a camera
pointing to the back and had an internal mic. 
So I pushed it and it faced the back, and then I turned the audio for
the back on.

 

. . . . 

 

A. . . . He said that he
was going to shoot and kill us when he got out of jail.

 

. . . . 

 

A.  The threat happened prior to the audio being
on.  It happened when I first sat in the
vehicle while I was fixing to go to the jail. 
That=s what I meant in the
report.   But when I first sat in the
vehicle, that=s when he said it.  That=s why I adjusted all my videos and cameras in
case he said it again or in case he did anything else, to get it all on
videotape while going to the jail.  And
that=s what -- the threat of
him killing us -- shooting to kill us when he gets out was prior to the audio
being turned on.  The one he -- the time
he said while en route, I guess what you=re saying, almost to the jail, that=s not the threat I=m talking about.  The threat is prior to.

 

. . . . 

 

A.  I remember what was said prior to the cameras
being turned on him and the audio turned on. 
He threatened me when I first sat in the vehicle, and then that=s what caused me to turn
the vehicle -- or the cameras to on the back with the audio and
everything.  

 

Q.  Well, why didn=t you put that in the
report?

 

A.  I have no idea.

 

Q.  If that=s the subject of your complaint, shouldn=t it have been put in
your report?

 

A.  Yes, sir.








While en route to the jail, Swaringen told the officer that A[e]very
one of you needs to be shot,@ and
this was played for the jury.  On cross
examination, Officer Allred agreed that there was no recording of Swaringen
saying he was going to shoot the officers after he got out of jail, that
Officer Shawver was physically present at the scene when (according to Officer
Allred) Swaringen said that he was going to kill the officers, that he never
put in his report Swaringen=s
statement about killing the officers, and that his failure to put that
statement in the report was an error.

On April 23, 2008, Swaringen was found guilty of
the offense of terroristic threat regarding the statement that Ahe was
going to shoot and kill us all after he gets out of jail@and
sentenced to 180 days in jail and a $1,000 fine.  This appeal followed.

                              III.  Legal and Factual Sufficiency

A. Standard of Review

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).








This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008). 
Thus, when performing a legal sufficiency review, we may not re-evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the factfinder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Neal v.
State, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129
S. Ct. 1037 (2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s determination is manifestly
unjust.  Lancon v. State, 253
S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson, 204 S.W.3d at 414B15,
417.  To reverse under the second ground,
we must determine, with some objective basis in the record, that the great
weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the factfinder=s.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  Unless the record clearly
reveals that a different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder=s
determinations, Aparticularly those determinations
concerning the weight and credibility of the evidence.@  Id. at 9.  Our deference in this regard safeguards the
defendant=s right to a trial by jury.  Lancon, 253 S.W.3d at 704.     An
opinion addressing factual sufficiency must include a discussion of the most
important and relevant evidence that supports the appellant=s
complaint on appeal.  Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B. Terroristic Threat

The elements of this offense are found in section
22.07 of the Texas Penal Code, which in part reads,

(a) A person commits an
offense if he threatens to commit any offense involving violence to any person
or property with intent to:

 

. . .
. 

 

(2) place any person in fear of imminent serious bodily injury;

 

. . .
.

 

(c) An offense under
Subsection (a)(2) is a Class B misdemeanor, except that the offense is a Class
A misdemeanor if the offense:

 

. . .
.








(2) is committed against a public servant.

 

Tex. Penal Code Ann. ' 22.07
(Vernon Supp. 2008).  

In Dues v. State, our Texas Court of
Criminal Appeals stated:

Therefore, in order to
commit this offense [i.e. terroristic threat] the accused must have the
specific intent to place any person in fear of imminent serious bodily injury.
. . .  Intent can be inferred from the
acts, words, and conduct of the accused. 
However, the accused=s intent cannot be determined merely from what
the victim thought at the time of the offense. 
Indeed, for this offense to be completed it is not necessary that the
victim or anyone else was actually placed in fear of imminent serious bodily
injury.  Additionally, it is immaterial
to the offense whether the accused had the capability or the intention to carry
out his threat.  All that is necessary to
complete the offense is that the accused by his threat sought as a desired
reaction to place a person in fear of imminent serious bodily injury.

 

634 S.W.2d 304, 305B06 (Tex.
Crim. App. 1982) (internal citations omitted).

C. Analysis

Swaringen stipulates that the statement, Ahe was
going to shoot and kill us all after he gets out of jail,@ is (1)
a threat to commit an offense, (2) which involves violence, and (3) was made to
a public servant; that the threat to Ashoot
and kill us all@ obviously contained a threat
involving serious bodily injury; and that the jury could conclude that the
threat was imminent.

His complaint with regard to legal sufficiency is
that the stipulated threat was delivered in a drunken stupor and that,
therefore, Swaringen was incapable of intentionally or knowingly making the
threat.  As he phrases it,








what if the actor is so
in his cups that he is incapable of formulating any intent to get a[n] action
or reaction?  Then the intent element is
rendered a nullity, and no conviction will lie. 
Such, appellate counsel would suggest, is the case here, and accordingly
[Swaringen=s] conviction ought to be
overturned.@

 








This argument is a non-starter.  It is axiomatic that A[v]oluntary
intoxication does not constitute a defense to the commission of a crime.@  Tex. Penal Code Ann. ' 8.04(a)
(Vernon 2003).  Likewise, this dog has
attempted to hunt in one of our sister courts and failed to do so.  Kingsbury v. State, 14 S.W.3d 405, 407B09 (Tex.
App.CWaco
2000, no pet.) (holding that section 8.04 was not a defense to terroristic
threat and that defendant=s acts, words, and conductCpouring
gasoline into a bug sprayer, getting a propane bottle, and telling his wife
that he was going to Aburn [her] ass up@ and to Aburn
this M.F. house with [her] in it,@ in
addition to attempting to set her and the house on fire, sufficiently
demonstrated intent).  The requisite
intent here can be inferred from Swaringen=s acts,
words, and conduct.  See Poteet v.
State, 957 S.W.2d 165, 167 (Tex. App.CFort
Worth 1997, no pet.); cf. Jones v. State, No. 10‑07‑00365‑CR,
2008 WL 3115117, at *2B3 (Tex. App.CWaco
Aug. 6, 2008, no pet.) (mem. op., not designated for publication) (holding
evidence of terroristic threat legally sufficient with regard to intent but
factually insufficient when defendant explained that he told complainant, who
had just lost reelection, that by Adead,@ he
meant Apolitically
dead@ because
of the Askeletons@ in her
closet).  We overrule Swaringen=s first
issue.

In his factual sufficiency complaint, Swaringen
argues that because no one but Officer Allred heard the initial threat, and
because Officer Allred did not put it in his police report, this should give
the

Court the gravest
concerns about the validity of this particular verdict, and that concern should
segue into this Court=s overarching
responsibility under Johnson . . . to reverse if the record Ademonstrates that the
proof of guilt is so obviously weak as to undermine confidence in the jury=s determination.@ [Swaringen] believes the
lack of corroboration by both the other witnesses and Officer Allred=s police report can only
point to a conclusion that the evidence was factually insufficient to sustain
[Swaringen=s] conviction.

 








Swaringen fails to mention that Officer Allred
testified that he was inside his police car when the initial threat was made,
presumably outside the hearing of the two other witnesses.  The officer also clearly and unequivocally
testified that the threat was made but that it was omitted from his
report.  The remainder of the evidence
showed Swaringen=s intoxicated and combative
nature and Officer Allred=s testimony that the initial
threat prompted him to activate the audio in his vehicle.[3]  Giving due deference to the jury=s
determination of Officer Allred=s
credibility and viewing the evidence in a neutral light, we cannot say that the
evidence supporting the conviction is so weak that the jury=s
determination is clearly wrong and manifestly unjust or that conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
jury=s
determination is manifestly unjust. 
Therefore, we conclude that the evidence is factually sufficient to
support Swaringen=s conviction, and we overrule
Swaringen=s second issue.

                                          IV.  Conclusion

Having overruled Swaringen=s two
issues, we affirm the trial court=s
judgment.

 

BOB
MCCOY

JUSTICE

 

PANEL: GARDNER, WALKER,
and MCCOY, JJ.

 

WALKER, J. concurs
without opinion.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: March 5, 2009











[1]See Tex. R. App. P. 47.4.





[2]According to Swaringen,
his Ahomicidal threats were
merely the beer talking.@





[3]We have reviewed the
recording of Swaringen=s behavior in Officer
Allred=s vehicle, which the jury
also reviewed.  The video shows Swaringen
cursing, throwing his body against the partition between the front and back
seats, and insulting Officer Allred and police in general.  At one point, Swaringen shouts, AEvery mother-f[*]cking
one of you needs to be shot on sight, dead as a f[*]cking doornail.@